# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ALPHA ENTERTAINMENT LLC,[1] | Case No. 20-10940 (LSS) |
| Debtor. | |
| PETER HURWITZ, solely in his capacity as Plan Administrator of Alpha Entertainment LLC, | Adv. Proc. No. 22-50256 (LSS) |
| Plaintiff, | |
| OLIVER LUCK, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO STAY PROCEEDINGS PENDING ADJUDICATION OF
DEFENDANT'S MOTION FOR WITHDRAWAL OF THE REFERENCE**

---

[1] The last four digits of the Debtor's federal tax identification number are 7778.

11106553

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

I. BACKGROUND ................................................................................................... 1

    A. Luck's Employment Agreement with the Debtor ....................................1

    B. The Bankruptcy Case ...............................................................................3

    C. The Connecticut Action ...........................................................................4

    D. This Adversary Proceeding ......................................................................9

II. ARGUMENT ........................................................................................................ 11

    A. Luck Is Likely to Prevail on the Motion for Withdrawal of the Reference ...........12

    B. The Plan Administrator Will Not Be Harmed by Any Stay ..................13

    C. Luck May Be Harmed If a Stay Is Not Entered .....................................14

    D. The Imposition of a Stay Is In the Public Interest ..................................14

III. CONCLUSION ..................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**                                                                                                        **Page(s)**

*Feldman v. ABN AMRO Mortgage Group Inc.*,
    515 B.R. 443 (E.D. Pa. 2014) ...................................................................................................12

*In re Beach First Nat. Bancshares, Inc.*,
    No. ADV 10-80143-DD, 2011 WL 2441501 (Bankr. D.S.C. Jan. 21, 2011) ..............12, 14

*In re Blue Point Carpet, Inc.*,
    86 B.R. 329 (Bankr. E.D.N.Y. 1988) ...............................................................................12

*In re DBSI, Inc.*,
    No. 08-12687 PJW, 2012 WL 1078079 (Bankr. D. Del. Mar. 30, 2012) ....................13, 14

*In re Eagle Enterprises, Inc.*,
    259 B.R. 83 (Bankr. E.D. Pa. 2001) .................................................................................11

*In re Innovative Commc'n Corp.*,
    No. 07-30012 (JKF), 2014 WL 2442173 (D.V.I. May 30, 2014) .....................................12

*Matter of Lieb*,
    915 F.2d 180 (5th Cir. 1990) ............................................................................................11

*Stern v. Marshall*,
    564 U.S. 462 (2011) ......................................................................................................... 12

*Wyndham Assocs. v. Bintliff*,
    398 F.2d 614 (2d Cir. 1968) .......................................................................................13, 15

**Statutes and Rules**                                                                                         **Page(s)**

11 U.S.C. § 544 ...........................................................................................................................10

11 U.S.C. § 547 ...........................................................................................................................10

11 U.S.C. § 548 ...........................................................................................................................10

11 U.S.C. § 550 ...........................................................................................................................10

28 U.S.C. § 157 ...........................................................................................................................12

Del. Code Ann. Tit. 6, § 1304 et seq. ..........................................................................................10

Fed. R. Bankr. P. 5011 ............................................................................................................ 1, 11

Pursuant to Federal Rule of Bankruptcy Procedure 5011(c), Defendant Oliver Luck ("Luck") respectfully requests that this Court enter an order staying this adversary proceeding (the "Adversary Proceeding") pending resolution of the Motion for Withdrawal of the Reference filed by Luck concurrently herewith.

In support of his Motion, Luck further states as follows:

## I. BACKGROUND

### A. Luck's Employment Agreement with the Debtor

1. On January 25, 2018, Alpha Entertainment LLC (the "Debtor" or "Alpha") was formed for the purpose of operating the XFL Professional Football League ("XFL"). (Compl. ¶ 7.)[1]

2. The Debtor was principally owned and capitalized by Vincent K. McMahon ("McMahon"). (*Id.*)

3. On May 30, 2018, Luck and the Debtor entered into that certain Contract for Employment as Commissioner and CEO (the "Employment Contract"). (*Id.* ¶ 9 & Ex. 1.) Pursuant to the Employment Contract, Luck was to serve as the Commissioner and CEO of the XFL, and was required to "devote substantially all of his business time to the performance of his duties to the XFL." (*Id.*) The Employment Contract had an initial term of July 1, 2018 through July 30, 2023. (Compl., Ex. 1, p. 3.)

4. In exchange for his obligations under the Employment Contract, Luck was to receive, *inter alia*, the following compensation: (i) a base salary of $5,000,000 payable in substantially equal semi-monthly installments; and (ii) a guaranteed annual bonus of $2,000,000 if Luck continued to be employed on the last day of each July 1 – June 30 contract year. (*Id.*) If

---

[1] For purposes of this Motion only, Luck adopts certain facts pleaded in the Complaint.

Luck were terminated for cause (as defined in the Employment Contract), he only would be entitled to payment for previously accrued salary and any vested employee benefits. (*Id.*) If Luck were terminated without cause, however, the Employee Contract provides that:

> Luck will be entitled to receive a lump sum cash amount, payable to him within 60 days of such termination, which shall be equal to (i) the aggregate amount of Base Salary and Guaranteed Annual Bonuses that would otherwise be payable to him during the remaining scheduled term of this Contract (i.e., through June 30, 2023 or, if applicable, any Renewal Periods) plus (ii) all Accrued Obligations plus (iii) the aggregate amount of premiums for coverage for Mr. Luck and his dependents under the health, accident, life and other insurance benefits that he was receiving immediately prior to such termination for a period of 24 months following such termination.

(*Id.*)

5.  To induce Luck into entering the Employment Contract and to guarantee the Debtor's obligations thereunder, McMahon executed that certain Guaranty dated May 30, 2018 (the "Guaranty"), whereby McMahon guaranteed, as primary obligor, the Debtor's performance of its agreements and obligations under the Employment Contract. (Compl., Ex. 1, at Exhibit A.) The Guaranty is "a guaranty of payment and not of collection." (*Id.*) The Guaranty further provides:

> The obligations of [McMahon] hereunder shall be absolute, unconditional, continuing and irrevocable and shall remain in full force and effect until the full performance by [Alpha] of all of its agreements and its obligations under the Transaction Documents,[2] irrespective of the validity, regularity or enforceability of any Transaction Document, any amendment or other modification or change thereto, the absence of any action to enforce the same, any waiver or consent by the [Luck] or [Alpha] with respect to any provision of any Transaction Document, the recovery of any judgment against [Alpha] or any action to enforce the same, any dissolution, liquidation or termination of [Alpha], or any other circumstances that may otherwise constitute a legal or equitable discharge or defense of [McMahon], all of which are hereby waived by [McMahon]. [McMahon] further waives any right of set-off or counterclaim it may have against [Luck] arising from any other obligations that [Luck] may have to [Alpha] or [McMahon]. This Guaranty shall be

---

[2] The Guaranty defines the term "Transaction Documents" as both the Employment Contract and the "Equity Agreements," which is defined in the Employment Contract.

2

> binding upon [McMahon] and shall inure to the benefit of [Luck] and, in each case, their respective estates, heirs, executors, legatees, devisees, personal representatives, successors and permitted assigns.

(*Id.*)

6. In connection with the Employment Contract, Luck and the Debtor also entered into that certain Confidentiality, Non-Solicitation and Non-Competition Agreement dated May 30, 2018 (the "CNNA").

7. The Employment Contract, the Guaranty, and the CNNA all provide that they shall be governed by and construed in accordance with the laws of the State of Connecticut without regard to its choice of law rules. (Compl., Ex. 1.)

8. Throughout the course of Luck's employment, the XFL was headquartered in Connecticut. (*See* Bankruptcy Case, D.I. 1 at 1 (listing the Debtor's principal place of business as Stamford, CT).)

9. As of the Petition Date (defined below), all of the Debtor's officers, directors, managing members, or other people in control of the Debtor were located in Stamford, Connecticut or, in one instance, in New York City, New York. (Bankruptcy Case, D.I. 195 at 285.)

10. On April 9, 2020, the Debtor terminated Luck's employment as Commissioner and CEO of the XFL.[3] (Compl. ¶¶ 15, 23.)

**B.    The Bankruptcy Case**

11. On April 13, 2020 (the "Petition Date"), just days after terminating Luck's employment, the Debtor commenced the above-captioned Chapter 11 bankruptcy case, which remains pending before this Court as Case No. 20-10940-LSS (the "Bankruptcy Case").

---
[3] Luck asserts that the Debtor's termination of his employment was wrongful and reserves all of his rights in that regard.

3

12. On the Petition Date, the Debtor also filed in the Bankruptcy Case its *Eleventh Omnibus Motion for Entry of an Order Authorizing the Debtor to Reject certain Executory Contracts Effective as of the Petition Date, seeking, inter alia, the rejection of the Employment Agreement* (the "Rejection Motion"), which sought, *inter alia*, to reject the Debtor's employment agreements with Luck. (Bankruptcy Case, D.I. 22.)

13. On May 11, 2020, this Court granted the Rejection Motion, approving the rejection of the Employment Contract as of the Petition Date. (Bankruptcy Case, D.I. 124.)

14. Luck has not filed a proof of claim in the Bankruptcy Case.

**C.    The Connecticut Action**

15. On April 16, 2020, Luck commenced an action against McMahon in the United States District Court for the District of Connecticut (the "Connecticut District Court"), in which he is seeking to recover approximately $23.8 million in salary and bonuses owed as a result of his wrongful termination under the Employment Contract. (*See generally* Ex. A, Connecticut Action, Dkt. No. 145 (Second Amended Complaint).) That action remains pending before the Connecticut District Court as Civil Action No. 3:20-cv-00516-VAB (the "Connecticut Action").

16. Initially, the Connecticut Action was brought solely against McMahon pursuant to the Guaranty. However, on June 26, 2020, the Connecticut District Court held that the Debtor was an indispensable party to the Connecticut Action. (Connecticut Action, Dkt. No. 80.) As a result, Luck sought relief from this Court to join the Debtor as a defendant in the Connecticut Action. (Bankruptcy Case, D.I. 295.) On August 7, 2020, this Court entered its *Agreed Order Granting Oliver Luck's Motion for Relief from Stay to Join Alpha Entertainment LLC in Connecticut Proceeding*, which lifted the automatic stay "for the sole purpose of allowing Oliver Luck to join Alpha as a defendant in the [Connecticut] Action for the sole purposes of (i) seeking

4

a declaration of whether or not Alpha properly terminated Mr. Luck for cause under the Employment Contract . . . and (ii) seeking a monetary judgment against Vincent K. McMahon under the Guaranty." (Bankruptcy Case, D.I. 355.)[4] Luck thereafter sought and was granted leave by the Connecticut District Court to summon the Debtor into the Connecticut Action, and to serve it with an amended complaint. (Connecticut Action, Dkt. Nos. 91, 93.)

17. On November 17, 2020, the Connecticut District Court issued a summons to the Debtor in the Connecticut Action, and, on November 18, 2020, the Debtor was served with the summons and amended complaint. (Connecticut Action, Dkt. Nos. 94–96.)

18. On January 22, 2021, Luck filed a Second Amended Complaint, (Ex. A, Connecticut Action, Dkt. No. 145), which remains the operative complaint in the Connecticut Action.

19. As against McMahon, Luck has asserted claims for declaratory relief (Count Two), breach of the Guaranty (Count Three), and breach of the implied duty of good faith and fair dealing (Count Four).[5] (Ex. A, Connecticut Action, Dkt. No. 145, at Counts Two, Three &

---

[4] On November 17, 2020, this Court entered an order, pursuant to Section 105(a) of the Bankruptcy Code and Fed. R. Bankr. P. 9019, approving a settlement and stipulation between the Debtor, the Official Committee of Unsecured Creditors of the Debtor, and McMahon, whereby, *inter alia*: (i) the Debtor "assigns all of its claims against Luck arising from or related to the Connecticut Action to McMahon (collectively, the "Estate Claims"); provided, however, that Estate Claims shall not include recovery actions under sections 105(a), 502(d), 510, 542 through 551 and 553 of title 11 of the United States Code;" (ii) McMahon agrees to assert the Estate Claims on behalf of, and in the name of, the Debtor as counter-claims against Luck in the Connecticut Action and to undertake the defense of the claims of Luck against the Estate in the Connecticut Action at McMahon's sole cost and expense; and (iii) to the extent McMahon recovers on the Estate Claims on behalf of the Debtor, the Debtor (or its successor) will be entitled to 67% of such collected recovery, which will not be reduced by McMahon's litigation costs associated therewith, or by McMahon's litigation costs associated with defending the Debtor against claims asserted by Luck against the Estate. (*See generally* Bankruptcy Case, D.I. 532.)

[5] As set forth below, the Connecticut District Court has granted summary judgment against Luck on his claim for breach of the implied covenant of good faith; accordingly, the Connecticut District Court has dismissed Count Four. (Ex. G, Connecticut Action, Dkt. No. 423 (ruling and order on summary judgment motions and other pending motions), at 54); *see also* Connecticut Action, Dkt. No. 326, at 22 (dismissing in part Luck's claim in Count Four against McMahon).)

5

Four.) The declaratory relief claim against McMahon seeks (i) a declaration that McMahon has waived all defenses and discharges to Luck's enforcement of the Guaranty, and (ii) a declaration that McMahon's obligations under the Guaranty are as primary obligor such that McMahon is primarily responsible to Luck for all amounts owed to him under the Employment Contract.[6] (*Id.* ¶¶ 32–33.) In his prayer for relief against McMahon, Luck asks the court to enter judgment in his favor and award: actual damages; reasonable attorneys' fees, expenses and costs; pre and post-judgment interest; and the declaratory judgment set forth in Count Two. (*Id.* at 11.) McMahon denies that Luck is entitled to the relief sought in the Second Amended Complaint. (Ex. B, Connecticut Action, Dkt. No. 338 (McMahon's answer and affirmative defenses to Second Amended Complaint), at 9.)

20. As against the Debtor, Luck has asserted a claim for declaratory relief (Count One). (Ex. A, Connecticut Action, Dkt. No. 145, at Count One.) The declaratory relief claim against the Debtor seeks (i) a declaration that the Debtor wrongfully terminated, materially breached and/or repudiated the Employment Contract without Cause, and (ii) a declaration that, in violation of the implied duty of good faith and fair dealing, the Debtor wrongfully terminated, materially breached and/or repudiated the Employment Contract without Cause. (*Id.* ¶¶ 28–29.) In his prayer for relief against the Debtor, Luck asks the court to enter judgment in his favor and award the declaratory judgment set forth in Count One. (*Id.* at 11.) The Debtor denies that Luck is entitled to the relief sought in the Second Amended Complaint, alleges that Luck was terminated for cause, and, in its affirmative defenses, alleges that Luck materially breached the

---

[6] As set forth below, the Connecticut District Court has dismissed Count Two only to the extent it seeks a declaration that McMahon has waived all defenses and discharges, legal or equitable, to Luck's enforcement of the Guaranty. (Ex. G, Connecticut Action, Dkt. No. 423 (ruling and order on summary judgment motions and other pending motions), at 43 n.10.)

11106553

Employment Contract and the CNNA. (Ex. C, Connecticut Action, Dkt. No. 339 (the Debtor's answer and affirmative defenses to Second Amended Complaint), at 1, 9.)

21. Since January 2021, the Debtor actively has pursued counterclaims against Luck in the Connecticut Action. (*See* Connecticut Action, Dkt. No. 126.) In the Debtor's amended counterclaims dated February 18, 2021, the Debtor asserts claims against Luck for breach of contract pursuant to the Employment Contract and the confidentiality provisions of the CNNA, and breach of fiduciary duties. (*See generally* Ex. D, Connecticut Action, Dkt. No. 153 (the Debtor's amended counterclaims).) The amended counterclaims seek, *inter alia*, monetary damages, an accounting, disgorgement of profits and forfeiture of compensation previously paid to Luck, prejudgment and post-judgment interest, and reasonable attorney's fees, expenses and costs. (*Id.* at 18.) Luck has asserted a number of affirmative defenses to the Debtor's counterclaims. (Ex. E, Connecticut Action, Dkt. No. 166 (Luck's answer and affirmative defenses to the Debtor's amended counterclaims), ¶¶ 123–167.)

22. The Connecticut Action has been heavily litigated, with over 450 entries filed on the docket in the over two years the case has been pending, including a number of dispositive motions and decisions thereon. (*See, e.g.*, Ex. F (Connecticut Action docket as of May 4, 2022); Connecticut Action, Dkt. Nos. 151, 171, 207, 326, 374, 380, 423.)

23. On February 11, 2022, the Connecticut District Court entered its eighty (80) page ruling and order on the parties' summary judgment motions, as well as various other pending motions, by which it, *inter alia*:

   a. Held that "no reasonable jury could find that the termination of Mr. Luck on the basis of his failure to comply with the Confidentiality Agreement could be for

7

cause," and granted summary judgment to Luck with respect to the issue of whether he disclosed confidential information;

b. Granted summary judgment to Luck with respect to the issue of whether he devoted substantially all of his business time to the performance of his XFL duties;

c. Held that there exist triable issues of fact as to whether Luck intentionally violated XFL policies or directives through his hiring and termination of Antonio Callaway from the XFL, and whether Luck's hiring and termination of Mr. Callaway were reasonably susceptible to cure, and denied the parties' motions for summary judgment with respect to those issues;

d. Granted summary judgment to Luck with respect to the issue of whether he used his company-issued cell phone for non-XFL related business in violation of XFL policies;

e. Granted summary judgment to Luck with respect to whether the Debtor and McMahon could rely on after-acquired evidence of Luck's alleged misuse of his company-issued cell phone as a defense to liability on Luck's claims or as a basis for the Debtor's counterclaims;

f. Dismissed Count Two of the Second Amended Complaint only to the extent it seeks a declaration that McMahon has waived all defenses and discharges, legal or equitable, to Luck's enforcement of the Guaranty;

g. Granted summary judgment to McMahon and the Debtor with respect to Luck's claim for breach of the implied covenant of good faith and fair dealing, and dismissed Count Four of the Second Amended Complaint accordingly; and

11106553

  h. Granted summary judgment to Luck with respect to the Debtor's allegations that Luck breached the Employment Contract, the CNNA, and his fiduciary duties to the Debtor by using his company-issued cell phone for non-XFL related business, disclosing confidential information of the XFL in violation of the CNNA, and abandoning his XFL duties and failing to devote substantially all his business time to the XFL or to the performance of his duties to the XFL, and dismissed the counterclaims as to those issues.

(Ex. G, Connecticut Action, Dkt. No. 423, at 31, 33, 38–40, 43 & n.10, 50, 53–55.) In sum, the court found that many of the Debtor's allegations did not provide a basis for terminating Luck for cause without providing notice and an opportunity to cure under the Employment Contract, but the court found that there are genuine issues of material fact as to "(1) whether the hiring and termination of Mr. Callaway was a permissible, enumerated reason for terminating Mr. Luck for cause; and (2) even it was, whether Mr. Luck's hiring of and failure to terminate Mr. Callaway could have been reasonably susceptible to cure." (*Id.* at 79.) As a result, trial will be held to address those two issues as they relate to Luck's breach of contract claim, Luck's declaratory judgment claims, and the Debtor's related counterclaims. (*Id.*)

  24. Jury selection and trial is scheduled to begin in the Connecticut Action on July 11, 2022. (Ex. H, Connecticut Action, Dkt. No. 432.)

  **D.** **This Adversary Proceeding**

  25. On April 11, 2022, the Plan Administrator commenced this Adversary Proceeding in the Bankruptcy Court by filing a Complaint against Luck dated April 11, 2022 (the "<u>Complaint</u>"). In the Complaint, the Plan Administrator seeks to avoid and recover as

9

preferential and constructively fraudulent transfers compensation payments that the Debtor made to Luck under the Employment Contract.

26. The Plan Administrator alleges, among other things, that Luck was not qualified for his position as Commissioner and CEO of the XFL, that Luck's compensation under the Employment Contract was grossly excessive, that Luck's performance as Commissioner and CEO was inadequate, that Luck improperly utilized his company-issued cell phone for personal business, and that Luck improperly disclosed confidential information. (Compl. ¶¶ 13–22.)

27. Based on these allegations and others, which are incorporated by reference into each count of the Complaint, the Plan Administrator asserts the following claims: in Count One, constructive fraudulent transfer under 11 U.S.C. §§ 544(b), 550 and Del. Code Ann. Tit. 6, § 1304(a)(2) et seq.; in Count Two, constructive fraudulent transfer under 11 U.S.C. §§ 548(a)(1)(B) and 550; in Count Three, preferential transfers within one year of the Petition Date under 11 U.S.C. §§ 547 and 550; and in Count Four, preferential transfers within ninety days of the Petition Date under 11 U.S.C. §§ 547 and 550.[7] (*See generally* Compl.) The Complaint identifies the following transfers: not less than $11,099,387.54 in transfers made to Luck under the Employment Contract in the two years prior to the Petition Date; not less than $7,288,461.75 in transfers made to Luck under the Employment Contract in the one year prior to the Petition Date; and not less than $1,596,153.91 in transfers made to Luck under the Employment Contract in the ninety days prior to the Petition Date. (*Id.* ¶¶ 27–29.)

28. As set forth in the prayer for relief, the Plan Administrator seeks the following: (i) avoidance of the transfers identified in the Complaint; (ii) a judgment against Luck and any

---

[7] Luck reserves all of his rights with regard to the Plan Administrator's claims, including whether they properly state a claim for relief.

mediate or immediate transferees of Luck for the value of the transfers received by, or made for the benefit of Luck; (iii) interest from the date of the transfers and expenses; and (iv) such other and further relief as the court deems just and equitable. (*Id.* at 11.)

29. Lastly, in the Complaint, the Plan Administrator makes a demand for a jury trial. (*Id.* at 12.)

30. Luck's original responsive pleading deadline was May 11, 2022, but has been extended by stipulation to June 8, 2022. (D.I. 2 & 5.)

31. Concurrently with this Motion, Luck is filing a motion for withdrawal of the reference and a motion for transfer of venue, which together seek to transfer this Adversary Proceeding to the Connecticut District Court.[8]

## II. ARGUMENT

Pursuant to Fed. R. Bankr. P. 5011(c), a bankruptcy court may stay proceedings pending disposition of a motion for withdrawal. Fed. R. Bankr. P. 5011(c); *Matter of Lieb*, 915 F.2d 180, 185 (5th Cir. 1990) ("Stays of bankruptcy proceedings pending the determination of motions for withdrawal are authorized by Bankr. R. 5011(c)."). Courts addressing whether to grant a stay pending adjudication of a motion to withdraw the reference consider: (1) whether the movant is likely to prevail on the merits; (2) whether the adverse party or debtor will be substantially harmed by a stay; (3) whether the movant may suffer irreparable harm if a stay is denied; and (4) whether the public interest will be served by granting the stay. *In re Eagle Enterprises, Inc.*, 259

---

[8] Because the Connecticut Action and this Adversary Proceeding involve the same parties, witnesses and substantially the same facts, and given that jury selection and trial is scheduled to begin in the Connecticut Action on July 11, 2022, Luck has filed in the Connecticut Action a motion seeking an injunction of this Adversary Proceeding. (*See* Connecticut Action, Dkt. No. 448.) That motion is fully briefed. (*See* Connecticut Action, Dkt. Nos. 448, 450, 453, 455.)

11

B.R. 83, 86 (Bankr. E.D. Pa. 2001). An analysis of these factors demonstrates that a stay of this Adversary Proceeding is warranted.

### A. Luck Is Likely to Prevail on the Motion for Withdrawal of the Reference

As explained at length in the Motion for Withdrawal of the Reference, the reference of this case eventually must be withdrawn because (i) the Bankruptcy Court is unable to conduct a jury trial in this Adversary Proceeding due to the parties' lack of consent to the Bankruptcy Court presiding over such trial, *see* 28 U.S.C. § 157(e) (bankruptcy court cannot conduct jury trial unless the parties consent); and (ii) the Bankruptcy Court lacks the constitutional authority to enter a final judgment without the parties' consent on preferential and fraudulent transfer claims when no proof of claim has been filed, and, here, the parties do not consent to the entry of final orders or judgment by the Bankruptcy Court, *see Feldman v. ABN AMRO Mortgage Group Inc.*, 515 B.R. 443, 448–49 (E.D. Pa. 2014); *In re Innovative Commc'n Corp.*, No. 07-30012 (JKF), 2014 WL 2442173, at *4 (D.V.I. May 30, 2014); *see generally Stern v. Marshall*, 564 U.S. 462 (2011). Bankruptcy courts commonly grant stays pending the adjudication of a motion to withdraw the reference in such circumstances. *See, e.g.*, *In re Beach First Nat. Bancshares, Inc.*, No. ADV 10-80143-DD, 2011 WL 2441501, at *2 (Bankr. D.S.C. Jan. 21, 2011); *In re Blue Point Carpet, Inc.*, 86 B.R. 329, 330 (Bankr. E.D.N.Y. 1988).

Moreover, principals of judicial economy overwhelmingly weigh in favor of withdrawal. The Connecticut District Court already is deeply familiar with the underlying facts and issues raised in this Adversary Proceeding. The factual allegations in the Plan Administrator's Complaint overlap substantially with the allegations in the Connecticut Action, and there is substantial overlap in the relief requested in this Adversary Proceeding and in the Connecticut Action. Indeed, in this Adversary Proceeding, the Plan Administrator seeks to avoid and recover

11106553

compensation payments made to Luck under the Employment Contract, and also requests interest and expenses. (*See generally* Compl.) Meanwhile, in the Connecticut Action, the Debtor seeks, *inter alia*, a "[d]isgorgement of profits and forfeiture of compensation previously paid to Luck," pre- and post-judgment interest, and reasonable attorney's fees, expenses, and costs. (Ex. D, Connecticut Action, Dkt. No. 153 (the Debtor's amended counterclaims), at 18.) Failure to withdraw the reference will result in duplication of effort by the parties and the court. Similarly, having one judge preside over the two actions would ensure there is not double recovery of the compensation payments made to Luck and there is consistent application of the rules of law. *See, e.g.*, *In re DBSI, Inc.*, No. 08-12687 PJW, 2012 WL 1078079, at *4 (Bankr. D. Del. Mar. 30, 2012) (observing that trustee "cannot get a double recovery" for fraudulent transfer and unjust enrichment claims that seek return of same funds); *see also Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 619 (2d Cir. 1968) ("There is a strong policy favoring the litigation of related claims in the same tribunal in order that pretrial discovery can be conducted more efficiently, duplicitous litigation can be avoided, thereby saving time and expense for both parties and witnesses, and inconsistent results can be avoided.").

For these reasons and others as set forth in the Motion for Withdrawal of the Reference, Luck is likely to prevail on merits of that motion.

### B. The Plan Administrator Will Not Be Harmed by Any Stay

This Adversary Proceeding was commenced just weeks ago, on April 11, 2022. Luck's original responsive pleading deadline was May 11, 2022, but has been extended by stipulation to June 9, 2022. (D.I. 2 & 5.) Luck has not yet responded to the Complaint. In addition, this Court has not entered any scheduling orders, and neither party has served discovery. Therefore, a brief stay will not adversely affect the Plan Administrator or disrupt the progression of this action.

13

*See In re Beach First Nat. Bancshares*, 2011 WL 2441501, at *2. Indeed, for reasons of efficiency and reducing duplication of effort, a stay will benefit the Plan Administrator and the Debtor's estate.

### C. Luck May Be Harmed If a Stay Is Not Entered

While Luck will not be irreparably harmed in the absence of a stay, should this matter proceed unabated, Luck will be forced to expend resources litigating this matter in this Court, only to face the very real prospect that such efforts have been mooted by a change in forum, whether to the United States District Court for the District of Delaware (the "Delaware District Court") or to the Connecticut District Court. Indeed, if any discovery disputes or other matters requiring judicial intervention are adjudicated while the motion for withdrawal of the reference remains pending, any decision made by this Court may need to be revisited at the district court level, thereby unnecessarily wasting the parties' resources. Moreover, because the Plan Administrator's claims are constitutionally non-core, if any dispositive motion were adjudicated by this Court, such ruling would still need to be reviewed by a district court. The Motion for Withdrawal of the Reference seeks to obviate the possibility of these duplicative costs.

### D. The Imposition of a Stay Is In the Public Interest

Granting the stay requested herein will serve the public interest because it will economize the resources of the Debtor's estate by ensuring that there is no duplication of effort between this Court and either the Delaware District Court or the Connecticut District Court. In addition, given the ultimate goal of transferring this Adversary Proceeding to the Connecticut District Court, imposing a stay pending adjudication of the motion for withdrawal of the reference furthers the public interest of ensuring that there is consistent application of the rules of law between this Adversary Proceeding and the Connecticut Action. *See, e.g.*, *In re DBSI, Inc.*, 2012 WL 1078079, at *4 (observing that trustee "cannot get a double recovery" for fraudulent transfer

14

and unjust enrichment claims that seek return of same funds); *see also Wyndham Assocs.*, 398 F.2d at 619 ("There is a strong policy favoring the litigation of related claims in the same tribunal in order that pretrial discovery can be conducted more efficiently, duplicitous litigation can be avoided, thereby saving time and expense for both parties and witnesses, and inconsistent results can be avoided.").

Accordingly, Luck submits that a stay of proceedings pending adjudication of the Motion for Withdrawal of the Reference is warranted.

### III. CONCLUSION

WHEREFORE, Defendant Oliver Luck respectfully requests this Court enter an order (i) staying this adversary proceeding pending adjudication of Oliver Luck's motion for withdrawal of the reference, and (ii) granting such other and further relief as the Court deems proper.

Dated: May 17, 2022
      Wilmington, Delaware       Respectfully submitted,

By: /s/ *Gregory J. Flasser*
    Daniel N. Brogan (5723)
    Gregory J. Flasser (6154)
    BAYARD, P.A.
    600 North King Street, Suite 400
    P.O. Box 25130
    Wilmington, Delaware 19801
    Telephone: (302) 429-4226
    Facsimile: (302) 658-6395
    Email: dbrogan@bayardlaw.com
    Email: gflasser@bayardlaw.com

    -and-

11106553

Eric S. Goldstein (admitted *pro hac vice*)
Jaime A. Welsh (admitted *pro hac vice*)
SHIPMAN & GOODWIN LLP
One Constitution Plaza
Hartford, CT 06103
Telephone: (860) 251-5000
Facsimile: (860) 251-5218
Email: egoldstein@goodwin.com
Email: jwelsh@goodwin.com

*Attorneys for Oliver Luck*